**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                                                    Cr. No. 08-2409 JH

**MICHAEL HUGH GAYLE,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's motion to suppress evidence [Doc. No. 28], filed December 15, 2008, and his supplemental motion to suppress [Doc. No. 44], filed February 11, 2009. On March 3, 2009, the Court held an evidentiary hearing on the motions, at which Defendant Michael Hugh Gayle ("Gayle") was present and represented by Steven Sosa. Mark Saltman represented the United States. After considering the evidence and the law, the Court concludes that both motions should be denied.

**FINDINGS OF FACT**

After considering the testimony, the exhibits, and the credibility of the witnesses, the Court makes the following factual findings. On July 9, 2008, in the early morning hours, Defendant Gayle was driving a commercial tractor-trailer at New Mexico's Motor Transportation Department's ("MTD") port of entry in Lordsburg, New Mexico. An MTD Inspector entered Gayle's trailer and found plastic bundles consistent with marijuana packaging. The MTD placed Gayle under arrest and at approximately 4:00 a.m. called the New Mexico State Police. Sergeant Thomas J. Mora

("Mora") responded in order to conduct an investigation and interview Gayle. He drove from Deming, New Mexico to Lordsburg, arriving at approximately 6:00 a.m. After speaking with the arresting officers, Mora and Tim Johnson ("Johnson"), also of the New Mexico State Police, interviewed Gayle in a room with a desk, telephone, and chairs at approximately 6:40 a.m. Mora read Gayle his rights from an Advice of Rights form. Gayle indicated that he understood those rights, initialing and signing the form. Then, Mora asked Gayle if he wanted to speak to them. Gayle indicated uncertainty about what to do, wondering whether he should speak to an attorney. Then, according to an audiotape of the interview, Mora made the following statement to Gayle:

> And if you–if you think you want to get a lawyer at this time, we can't talk to you. Okay? Which means is we can't really–we can't really tell the other agency, you know, that this guy was being honest. This guy told us his whole story. It's not like a lawyer can come over right now and sit in this chair beside you and to answer questions. What's going to happen is you'll have to go to–to county jail first and then you'll have to wait for your appointed attorney and whenever they're available for you to talk to them. So that's up to you, and it's a big decision that you're going to have to make right now. And like I said, you can stop it. And if you want to answer some questions, that's fine. You–you can stop answering questions at any time if you want to. That's your opportunity. So if you want to talk now until then, and if you don't feel comfortable with the questions that we're asking you, you can say, you know what? I just want to stop answering questions at this time until I get a lawyer. Or if you–like I said, it's a big decision you have to make right now at this time.

At that time, Gayle agreed to talk to Mora and Johnson and in response to their questions admitted that he was knowingly transporting the marijuana from Tucson, Arizona to Brooklyn, New York. During the interview, Mora, Johnson, and Gayle spoke in normal, conversational tones. Mora and Johnson did not threaten Gayle, and the tape contains no indication of any form of coercion. At no point did Gayle say that he was tired or hungry, or ask for a break. During the course of that interview, Gayle's cell phone rang, which led to a conversation about the phone. Mora and Johnson obtained Gayle's cell phone and looked at the phone numbers listed in the "missed calls" and

"received calls" directories.  They did not obtain Gayle's permission to do so, though it appears that Gayle participated in the review of the missed and received calls.

After Mora and Johnson ended the interview, they unloaded the marijuana from Gayle's trailer and transported it to the Drug Enforcement Administration ("DEA") office in Las Cruces, New Mexico, while an MTD officer drove Gayle to Las Cruces as well.  Gayle arrived at the Las Cruces DEA offices at approximately 12:30 p.m. on July 10, 2008.  DEA Special Agent Juan Fernandez ("Fernandez") and Sunland Park Police Department Task Force Officer Angel Luna ("Luna") met Gayle within forty five minutes of his arrival and interviewed him in a room with a table, a desk, a computer, and chairs.  Fernandez noticed that Gayle's eyes were bloodshot.  They advised Gayle of his *Miranda* rights, and he agreed to answer questions.  Again, Gayle stated that he was knowingly transporting the marijuana from Tucson to Brooklyn.  He did not tell the agents that he was tired.  Toward the end of the interview, Gayle told Fernandez and Luna that contact information for other people involved in drug trafficking was stored in his cell phone, which was sitting on the desk in front of him.  Gayle began to retrieve contact information from the phone, and Fernandez, seeking to prevent Gayle from deleting information, held the phone while Gayle identified the phone numbers for certain individuals. Gayle helped Fernandez obtain the information from the cell phone and did not object to the search.  Furthermore, Gayle did not object to any further searches by the DEA.  Fernandez wrote down the numbers that Gayle pointed out, and the interview concluded.  Then, Fernandez was fingerprinted, photographed and transported to the county jail.  Afterwards, a DEA intelligence analyst downloaded the contact list, as well as recent call information, from Gayle's phone.  A couple of days later, the DEA returned the phone to Gayle.

## CONCLUSIONS OF LAW

First, the Court concludes that, under the totality of the circumstances, all of Gayle's

statements to law enforcement officers were voluntary. Gayle does not contend that any of the officers coerced, harassed, or intimidated him. However, he does assert that Mora and Johnson used false promises of leniency in return for his cooperation, and that they made those statements prior to their tape-recorded interview of him. Specifically, Gayle contends that Mora and Johnson told him off-tape that if he cooperated in their investigation and led them to high ranking members of the drug conspiracy, he would not go to jail. He also asserts that he believed the same arrangement to be in place several hours later when he spoke with Fernandez and Luna. However, after reviewing the evidence, listening to the recording of the interview conducted by Mora and Johnson, and hearing the testimony of the witnesses, the Court finds that Gayle's testimony is not credible and concludes that Fernandez and Luna made no such promises.[1] The Court concludes the recording shows Gayle's statements to be at odds with an alleged promise of leniency. Significantly, Gayle appears to be uncertain about what to do, and was considering whether he should first consult with an attorney, which suggests that Gayle was not relying on any promises that were made prior to the recorded portion of the interview.

Further, the Court concludes that Mora's statements made on tape which are quoted above are not coercive under the totality of the circumstances. Mora is making factual statements that appear to be true—that if Gayle opted to wait for his attorney, that attorney would not be available immediately at the port of entry. Instead, Gayle would have to wait at the county jail until an

---

[1] Gayle argues that Mora and Johnson made comments to Gayle regarding their experience with drug interdiction and Gayle's family that did not relate to matters discussed in the recorded interview because they were prefaced by words suggesting that Mora and Johnson had discussed those matters with Gayle before the recording began. The Court carefully reviewed the interview and disagrees with Gayle's interpretation. It appears to the Court that the interview was self contained, and the comments attributed to Johnson flow from the interview itself. The interview does not appear to contain gaps that can be explained only by off-tape conversation.

attorney was appointed for him. That is a true statement. Furthermore, it is true that in the absence of any discussion with Gayle, Mora would be unable to tell the DEA agents whether or not Gayle was cooperating with the investigation. The Court finds no impermissible coercion or promises in Mora's statements. After considering the totality of the circumstances surrounding Gayle's incriminating statements, the Court concludes that Gayle made the statements voluntarily. Therefore, the Court will deny Gayle's motion to suppress his incriminating statements.

Finally, Gayle moves to suppress the evidence obtained as a result of the search of his cell phone, first by Mora and Johnson, and later by Fernandez and intelligence officers of the DEA. Citing the need to preserve evidence, the Fourth, Fifth, and Seventh Circuits have held that officers may perform a warrantless search to retrieve text messages and other information from cell phones and pagers seized incident to an arrest. *See United States v. Murphy*, 552 F.3d 405,411-12 (4th Cir. 2009); *United States v. Finley*, 477 F.3d 250, 260 (5th Cir.), *cert. denied*, 549 U.S. 1353, 127 S.Ct. 2065, 167 L.Ed.2d 790 (2007); *United States v. Ortiz*, 84 F.3d 977, 984 (7th Cir. 1996). The Tenth Circuit has agreed. *See Silvan W. v. Briggs*, No. 07-4272, 2009 WL 159429 at *6 (10th Cir. Jan. 23, 2009) (unpublished). Here, the Court concludes that the search by Mora and Johnson was performed incident to Gayle's arrest because they searched the phone within a few hours of seizing him, at the same place where he was seized, and because he had not yet been fingerprinted, photographed, booked, or admitted to jail. The search was necessary in order to preserve the information regarding recent calls that was stored in the phone. Furthermore, the Court concludes that the later searches of the cell phone by Fernandez and DEA intelligence officers were performed with Gayle's consent. Therefore, the information gleaned from Gayle's cell phone was obtained lawfully and will not be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's motion to suppress evidence [Doc. No. 28], filed December 15, 2008, and supplemental motion to suppress [Doc. No. 44], filed February 11, 2009 are **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**